See Dissenting Opinion

Filed 5/5/25  P. v. Quintana CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083225 |
| v. | (Super.Ct.No. RIF096230) |
| ROBERT EARL QUINTANA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Reversed with directions.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

Robert Earl Quintana appeals from the trial court's order denying his petition for resentencing under Penal Code section 1172.75.[1] Section 1172.75, subdivision (a) declares legally invalid prison prior enhancements "imposed" before 2020. If a defendant has such an enhancement, their sentence is to be recalled, and they are to be resentenced under current laws, which may be more lenient than former laws.

The trial court denied Quintana's petition because his enhancement was "imposed and stayed" in his judgment rather than "imposed and executed." In doing so, the trial court followed *People v. Rhodius* (2023) 97 Cal.App.5th 38, 43, review granted, Feb. 21, 2024, S283169 (*Rhodius*). In this opinion, we explain why we disagree with *Rhodius* and conclude an enhancement is "imposed" under section 1172.75 when included in the judgment, even if the punishment on it is stayed.

We base our conclusion on the whole statute's text, including its express purpose of allowing defendants to benefit from other ameliorative changes in sentencing laws, to eliminate sentencing disparities between those sentenced in the past and those sentenced today. Given that purpose, we do not read the statute to exclude defendants because the punishment on their prison prior enhancement was stayed. We also explain our view that *Rhodius* misconstrued legislative intent by focusing exclusively on the intent expressed when the statute, as introduced, involved striking invalid enhancements without a resentencing. Later, the statute was amended and enacted with recall-and-resentencing provisions. Accordingly, we reverse the trial court's order.

---

[1] Undesignated statutory citations in this opinion refer to the Penal Code.

I. Section 1172.75 Provides for a Resentencing in All Cases with a Prison Prior Enhancement Included in the Judgment

Section I.A below explains that section 1172.75's text shows that "imposed" in its subdivision (a) encompasses any qualifying prison prior that was imposed, regardless of whether its punishment was stayed.  We need not rely on legislative history, but section I.B explains how the history of the section confirms this determination.

*A. Statutory Text*

Legislation effective in 2020 prospectively abolished most prison prior enhancements that had been available under section 667.5, subdivision (b).  (Senate Bill No. 136 (2019-2020 Reg. Sess.); Stats 2019, ch. 590.)  Our Legislature made that abolition retroactive in 2022, through Senate Bill No. 483 ((2021-2022 Reg. Sess.); Stats 2021, ch. 728), which enacted section 1171.1, later re-numbered as section 1172.75.

The first subdivision of this section contains the word "imposed" at issue here.  It declares invalid almost any prison prior enhancement that had been imposed before the enhancements were abolished.  That subdivision contains just one exception, for defendants convicted of sexually violent offenses.  It states: "[a]ny sentence enhancement that was *imposed* prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid."  (§ 1172.75, subd. (a) [italics added].)

Subdivision (a) contains no exception for enhancements that were imposed and stayed.  (§ 1172.75, subd. (a).)  When we interpret a statute, we are to start with the usual

and ordinary meaning of its terms in the statutory context. (E.g., *Make UC a Good Neighbor v. Regents of the University of California* (2024) 16 Cal.5th 43, 55.) Ordinarily, an enhancement placed in a judgment is described as "imposed" even if the punishment is stayed. (See, e.g., *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1163 [describing prior serious felony enhancement as "imposed and stayed"].) Considering the ordinary language of subdivision (a) alone, there is no reason to read into it an exclusion that the Legislature could have added but did not. (*People v. Mayberry* (2024) 102 Cal.App.5th 665, 676 ["plain language" of subdivision (a) includes imposed and stayed enhancements], review granted Aug. 14, 2024, S285853; *People v. Espino* (2024) 104 Cal.App.5th 188, 194 ["section 1172.75 should be interpreted according to the ordinary meaning of the word 'impose' and therefore applies whenever a prison prior is included in a judgment, whether the prior is executed, stayed, or punishment is struck"], review granted, Oct. 23, 2024, S286987.)

The Legislature *could* use "imposed" as an abbreviated way to communicate "imposed and executed," so it is appropriate to examine the language of the rest of the section rather than subdivision (a) alone. Analyzing a different statute, our Supreme Court found "the word 'impose' . . . must be interpreted as shorthand for 'impose and then execute' to make sense." (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1127.) There, the court found that the statutory text "internally" resolved "any possible ambiguity" about the term. (*Id*. at p. 1126) The subdivision at issue used "imprisonment" as a direct object of "imposed." (See *ibid*. ["[o]nly one additional term of imprisonment . . . shall be

4

imposed"] [quoting § 12022.53, subd. (f)].)  Another provision in the section used the term "impose punishment."  (*Id*. at p. 1127 [quoting  § 12022.53, subd. (j)].)  A provision limiting credits awarded based on the amount of imprisonment also "ma[de] sense only" if "imposed" meant "imposed and execute."  (*Ibid*. [quoting § 12022.53, subd. (i)].)

In contrast, section 1172.75 does not use the word "imposed" in conjunction with words like "imprisonment" and "punishment."  We need not read the word as shorthand for the statute to "make sense."  Indeed, in *People v. Renteria* (2023) 96 Cal.App.5th 1276, 1282 (*Renteria*), almost two years after the statute was enacted, even the People conceded that the law "squarely applies" to "imposed and stayed" enhancements.  The People's view of the ordinary meaning, after the People had taken positions in the resentencings of many defendants around the state,[2] indicates that the shorthand interpretation is unnecessary for the statute to "make sense."

In holding that "imposed" in section 1172.75 means "imposed and executed," *Rhodius*, *supra*, 97 Cal.App.5th at p. 43, stated that "it is necessary to look at the statute as a whole to interpret the meaning of the term 'impose.' "  But, beyond subdivision (a), *Rhodius* looked only at one provision, the word "lesser" in subdivision (d)(1).  (*Rhodius*, at pp. 43-44.)  We will explain why the whole statute provides strong reasons to conclude that courts should not read into subdivision (a) an exclusion for "imposed and stayed"

---

[2]  All resentencings under section 1172.75 were to be completed by December 31, 2023, two years after the effective date of the statute.  (§ 1172.75, subd. (c)(2).)  *Renteria* was filed on October 18, 2023, and its remittitur issued January 22, 2024.

enhancements. Even the term "lesser" on which *Rhodius* focused supports reading "imposed" to include all enhancements in the judgment.

### 1. *Subdivision (b)*

Subdivision (b) of section 1172.75 charges prison administrators with identifying judgments that include the enhancements declared invalid in subdivision (a). It requires the "Secretary of the Department of Corrections and Rehabilitation [CDCR] and the county correctional administrator of each county" to "identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a)" and to provide certain information about those people "to the sentencing court that imposed the enhancement." (§ 1172.75, subd. (b).)

The subdivision contains no suggestion that prison administrators exclude enhancements imposed and stayed. A drafter of subdivision (b) could not expect that prison officials, charged with finding enhancements described in subdivision (a) and without any other express direction, would construe "imposed" using inferences gleaned from subsequent provisions of the statute, as *Rhodius*'s view suggests they should. (§ 1172.75, subds. (a), (b).) The natural reading of subdivision (b) applies the interpretation the Attorney General had in *Renteria*, *supra*, 96 Cal.App.5th at p. 1282; that is, that subdivision (a) includes all imposed prison prior enhancements. Had the Legislature wished to exclude "imposed and stayed" enhancements, it would not have prisons report scores of these cases to courts for review.

6

In fact, when drafting and voting on the statute, the Legislature was aware that CDCR had identified the group of individuals with enhancements imposed, when subdivision (a) was in the statute but none of the resentencing provisions yet were. CDCR informed the Assembly Public Safety Committee that it had identified 10,133 inmates. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 483 (2021-2022 Reg. Sess.) as amended July 7, 2021, pp. 3-4.) We know, from this case and many others, that CDCR identified defendants whose enhancements were "imposed" but also stayed, so we have every reason to presume that CDCR was including defendants like Quintana all along. Thus, CDCR appears to have done exactly what a drafter or reader of the text would have expected it to do.

Subdivision (b), for these reasons, supports interpreting "imposed" in subdivision (a) to mean "imposed." (§ 1172.75, subds. (a), (b).) A statute that excluded "imposed and stayed" enhancements would provide clearer instructions to CDCR to exclude them.

*2. Subdivision (c)*

Subdivision (c) of section 1172.75 instructs trial courts on what to do with the information from prison administrators. The court is required to "verify" that the "current" judgment includes a sentencing enhancement described in subdivision (a). (§ 1172.75, subd. (c).) This means that the court is to check to ensure that the enhancement remains in the operative judgment.

The use of the verb "verify" suggests that the court is to confirm the judgment on its face falls within subdivision (a), rather than exercise judicial discretion to evaluate it.

7

"Verifying" typically refers to confirming truth using external information, not analyzing something afresh. (See, e.g., *Intellicheck Mobilisa, Inc. v. Wizz Sys., LLC* (W.D. Wash. 2016) 173 F.Supp.3d 1085, 1108 [defining "verify" as "'to confirm the truth or truthfulness of. . .to confirm or establish the authenticity or existence of'"].) The use of the adjective "current" suggests that the court's verifying task is to ensure the enhancement imposed in the judgment identified by CDCR has not been vacated, such as on direct appeal.

The task of *verifying* that the *current* judgment includes the enhancement suggests that CDCR has performed a ministerial task of identifying defendants with the enhancements. It also suggests that the court's task is to confirm that the enhancement is still in the current judgment. This reading makes contextual sense because, before the legislation was enacted, CDCR told the Legislature that it had identified the inmates (10,133 of them) whose judgments included the now-invalid enhancement. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 483, supra, as amended July 7, 2021, pp. 3-4.) As CDCR had identified the defendants with pre-2020 prison priors well before the legislation was enacted, it would leave the court's task to verify that, between the time that CDCR provides the judgments and the resentencing hearing, the enhancement had not already been eliminated from the current judgment. This is an ordinary meaning of the combination of "verify" and "current": to confirm that previously provided information is unchanged. (Cf. Welf. & Inst. Code, § 12304.41 ["verify" entity's

8

"current" mailing address and update if needed]; Bus. & Prof. Code, § 7599.39 [licensee to "verify" proof of "current" registration].)

Subdivision (c) contains no suggestion that the court is supposed to exclude imposed enhancements for any reason not stated in subdivision (a). (§ 1172.75, subds. (c), (a).) On the contrary, the trial court must confirm that the judgment "includes a sentencing enhancement described in subdivision (a)" (§ 1172.75, subd. (c)), the provision that describes prison priors "imposed" without indicating that stayed enhancements are excluded. Through this point in the statutory text, there is not even an arguable reason why a court would think its job of "verifying" includes excluding the many cases in which courts stayed punishment on all the prison prior enhancements.

Once a trial court determines the current judgment "includes an enhancement" described in subdivision (a), "the court shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).) At that stage, "section 1172.75 requires a full resentencing, not merely that the trial court strike the newly 'invalid' enhancements." (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402.) The statute thereby provides the entire process resulting in a mandatory resentencing without suggesting that the term "imposed" excludes "imposed and stayed."

*3. Subdivision (d)(1)*

In subdivision (d)(1), the Legislature required that the resentencing must result in a "lesser" sentence than the one originally imposed. (§ 1172.75, subd. (d)(1).) That description of a "lesser" sentence includes one where nothing changed from the original

sentence but the elimination of an enhancement with a stayed prison term. Such a sentence is neither a "greater" sentence nor the "same" sentence earlier imposed. Rather, a sentence with an invalid enhancement eliminated is a lesser one than a sentence with one included. (*People v. Bravo* (2025) 107 Cal.App.5th 1144, 1156 [a sentence is a "lesser sentence" when there are fewer components to it, even if no "on the ground change"].) Though they may not be onerous, enhancements with stayed or struck punishment are, as a formal matter, imposed for penological reasons.[3]

The Legislature did not require that the court impose a "shorter" prison term than before. This choice of "lesser" rather than "shorter" appears deliberate. Subdivision (d)(1) also states that the court may not impose a "longer" sentence than the original one. (§ 1172.75, subd. (d)(1).) Though it forbade a *longer* sentence, the Legislature did not require a *shorter* one.

When the Assembly Committee on Public Safety added the "lesser" language to the statute in a July 15, 2021, amendment, it had a reason to use that word. It had been informed that thousands of sentences would be rendered "lesser" but not necessarily "shorter" with the elimination of an invalid enhancement. CDCR had reported that 3,061

---

[3] A trial court can strike a prison prior in its entirety under section 1385, subdivision (a). (*People v. Fuentes* (2016) 1 Cal.5th 218, 225.) If a court instead imposes and stays punishment on an enhancement, the stay can be lifted if a part of the sentence is reversed. (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1469 ["if the unstayed sentence is reversed, a valid sentence remains extant"]; *People v. Begnaud* (1991) 235 Cal.App.3d 1548, 1553 ["When the principal term was reversed, the stay was removed and the full middle term became the sentence."].) The trial court can also impose an enhancement but strike the punishment for the penological purposes suggested by rule 4.428(b) of the California Rules of Court.

inmates with a prison prior were serving an indeterminate sentence (that is, a life sentence), as Quintana is here. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 483, supra, as amended July 7, 2021, p. 4.) The report explained that for these defendants to be released they "would still be required to have a parole suitability hearing before the Board of Parole Hearings." (*Ibid*.) When CDCR provided the report, the "imposed" language in subdivision (a) had been in the draft statute for several months, since March 3, 2021. CDCR had no different standard for what enhancements the statute covered, other than that they were "imposed."

The Legislature thereby learned that when courts eliminate prison priors from the judgment of any of over 3,000 defendants with indeterminate sentences, that action would not make a shorter sentence. Even if a component of such a defendant's determinate sentence (or minimum custody time on their life sentence) is reduced, the defendant stays in custody for life unless they—separately—qualify for release on parole. (See, e.g., *People v. Dowdy* (2024) 107 Cal.App.5th 1, 5-6 [prison priors imposed run consecutive to 25-years-to-life sentence].) Such a defendant might, on a section 1172.75 resentencing, receive a shorter sentence for reasons *other* than the elimination of the enhancement.

Told that CDCR had identified 3,061 inmates with indeterminate sentences to whom the draft section 1172.75 would apply, the Legislature enacted the statute. These inmates qualify to have their enhancements eliminated and to be resentenced. The Legislature chose to eliminate these legally invalid enhancements even if doing so would

11

not mean a shorter sentence for the inmate. The use of "lesser" in the statute accords with that. The Legislature's treatment of indeterminate sentences and its use of the term "lesser" (rather than "shorter") support concluding that section 1172.75 applies to "imposed and stayed" enhancements, a similar situation where the elimination of the enhancement would not itself mean a shorter sentence.

*Rhodius*, *supra*, 97 Cal.App.5th at p. 44, interpreted the requirement that the resentencing must "result in a lesser sentence" as meaning that an enhancement is imposed under subdivision (a) only if "the repealed enhancement increased the length of the sentence." Otherwise, *Rhodius* concluded, a resentencing court would have to "arbitrarily lower" the sentence, because the elimination of the enhancement would not itself do that. (*Ibid.*)

This view would be better supported had the Legislature required a "shorter" sentence. The Legislature did not do so, even though it prohibited "longer" sentences. The view also does not square with the Legislature's apparent approval of resentencing where enhancements to indeterminate sentences do not "increase[] the length of the sentence" (*Rhodius*, *supra*, 97 Cal.App.5th at p. 44) because those defendants are subject to a life sentence whether or not the enhancement is executed or stayed. The view *Rhodius* articulated seems to require that defendants with indeterminate sentences not receive section 1172.75 relief even if their enhancement was imposed and executed, because such an enhancement does not increase their sentence length. But the Legislature was told that CDCR had identified these defendants as among those with an

12

enhancement imposed, and the Legislature enacted the statute. If anything, then, the distinctive term "lesser" contradicts *Rhodius*'s conclusion: it helps show the statute includes both defendants with indeterminate sentences and with stayed enhancements. For each, simply eliminating the enhancement is a lesser sentence but not a shorter one.

*4. Subdivisions (d)(2), (d)(3), and (d)(4)*

*Rhodius* correctly identifies a central legislative goal in enacting section 1172.75, ensuring that defendants are not "serving time specifically based on the imposition of additional incarceration as a result of a section 667.5(b) prior." (*Rhodius*, *supra*, 97 Cal.App.5th at p. 47.) That purpose is achieved because any interpretation of "imposed" includes all defendants with "imposed and executed" enhancements.

But the Legislature did not simply *eliminate* the enhancements by ordering them struck. Rather, it required the court to "recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).) The Legislature ordered the resentencing of inmates based on current sentencing rules and "any other changes in law that reduce sentences or provide for judicial discretion." (§ 1172.75, subd. (d)(2).) The Legislature expressly stated its purpose: "to eliminate disparity of sentences and to promote uniformity of sentencing." (*Ibid.*) In recent years, there have been an array of ameliorative sentencing measures, and defendants receive the benefits of any of them at the resentencing. (See *People v. Christianson* (2023) 97 Cal.App.5th 300, 314 [section 1172.75 "involves statutory amendments expressly aimed at *reducing* sentences" and requires a full resentencing "in light of all associated sentencing reform"), review granted Feb. 21, 2024, S283189.)

13

To that end, the Legislature specified that a defendant could obtain a lesser sentence based on "postconviction factors." (§ 1172.75, subd. (d)(3).) At the resentencing, the inmate can benefit from their "disciplinary record and record of rehabilitation"; evidence that "age, time served, and diminished physical condition, if any, have reduced [their] risk for future violence"; and evidence that "circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).) For the resentencing, the court placed a presumption, like the one it placed in section 1170, subdivision (b)(2) — a statute effective on the same date as section 1172.75 (see *People v. Lynch* (2024) 16 Cal.5th 730, 742) — that the sentence will not exceed the middle term absent facts in aggravation that the inmate has admitted or that have been proved in court beyond a reasonable doubt. (§ 1172.75, subd. (d)(4).)

These resentencing goals apply just as well to those with *stayed* punishment on their enhancements as they apply to those with *executed* punishment. In fact, if we exclude those inmates with stayed punishment from section 1172.75 relief, we create more sentencing disparities, not fewer.[4] Here, Quintana is a murder defendant, with a 50-years-to-life sentence. Had his sentencing judge in 2003 imposed-and-executed, rather

---

[4] Section 1172.75, however interpreted, leaves disparities, as inmates who received no prison prior enhancement at all do not receive a resentencing. Yet the Legislature wished to eliminate disparities between the sentences of those sentenced under old laws and those sentenced today. Including more (rather than fewer) inmates for resentencing serves that goal. And we create disparities among the class of inmates with a prison prior if we apply the resentencing benefit based on whether their punishment was executed.

14

than imposed-and-stayed punishment on his prison prior, it would mean he would have another year consecutive to that life sentence (alternatively put, a 51-years-to-life sentence). As a murder defendant, Quintana may have no reduction in prison time available at a resentencing. But his post-judgment motion to reduce his $10,000 restitution fine exemplifies the disparity created if we exclude from section 1172.75 those with stayed punishment on their enhancement.

In section II, below, we hold that the trial court correctly rejected Quintana's attempt to reduce his $10,000 fine, as it lacked jurisdiction to do so. But the trial court suggested that it would reduce the fine if Quintana were resentenced: "every time I did a resentencing I reduced [fines] to statutory minimums and struck all other prior fines and fees as no longer authorized by law. But I was resentencing." The court said: "Part of me just wants to [say] on a pragmatist side, okay, the [$]10,000 is stricken." But because the court applied *Rhodius*, Quintana had no resentencing. Applying *Rhodius* meant that a defendant just like Quintana but with an "imposed and executed" prison prior enhancement would receive the reduction that the court said it routinely applied. Quintana, though, would be denied this benefit solely because his trial court stayed the one-year term of punishment on his prison prior. This is not the uniformity in sentencing that section 1172.75, subdivision (d)(2) seeks. In other cases, defendants may have prison time (rather than fines) at stake due to the same reasoning.

Every inmate with an "imposed and executed" prison prior receives relief under section 1172.75, accomplishing the legislative goal of ensuring inmates do not serve time

15

on prison priors. But the legislative resentencing policy in section 1172.75, subdivisions (d)(2), (d)(3), and (d)(4) applies equally to those with "imposed and executed" and "imposed and stayed" prison priors. We undermine the uniform sentencing goal of the statute if we deny resentencing to those with punishment stayed on their enhancement.[5]

*5. Subdivision (f)*

Finally, subdivision (f) of section 1172.75 directly refutes the view that a prison prior enhancement must increase the length of a sentence to warrant resentencing. Beginning January 1, 2025, subdivision (f) renders ineligible for recall and resentencing sexually violent offenders who have a sentence of death or of a life term without the possibility of parole (LWOP). That exclusion reflects the assumption that section 1172.75 resentencing applies to defendants with death or LWOP sentences, so long as the crime is not a sexually violent offense. In such cases, any imprisonment on the prison prior does not increase the length of the sentence. With or without the enhancement, these defendants cannot be released at all. The enhancements nevertheless qualify a defendant for recall and resentencing. This demonstrates that the statute contemplates that enhancements are "imposed" under subdivision (a) when they are included in the

---

[5] The Legislature recently enacted a statutory provision that further bolsters the view that it intended section 1172.75 to be construed to permit, rather than restrict, resentencings. Effective at the beginning of 2025, section 1171 states that a trial court "has jurisdiction to modify every aspect of the defendant's sentence" in postconviction proceedings, including those under section 1172.75, so long as there is no more specific rule prohibiting doing so. (§ 1171, subds. (a), (c) & (c)(2); see Assembly Bill No. 2483 (Stats. 2024, ch. 964, § 2, eff. Jan. 1, 2025).)

judgment, not only where "the repealed enhancement increased the length of the sentence."  (*Rhodius*, *supra*, 97 Cal.App.5th at p. 44.)

*B. Legislative History*

As discussed in Section I.A above, the word "imposed" in subdivision (a), read either alone or with the whole statute, is best interpreted as including both "imposed and executed" and "imposed and stayed" enhancements.  The text conveys that all defendants with prison priors imposed in their judgment are to have their sentence recalled and be resentenced.  Narrowing the meaning of "imposed" to exclude some enhancements conflicts with the express purpose of the recall-and-resentencing provisions.

The history of the bill that enacted section 1172.75 supports reading of the provision's word "imposed" to include all prison priors included in the judgment. Effective January 1, 2020, the Legislature established the Committee on Revision of the Penal Code to study that Code and propose reforms.  (Government Code §§ 8280, 8290.5.)  Its first set of recommendations, published February 9, 2021, contained two recommendations that became part of section 1172.75.[6]  The first recommendation was to strike the prison prior enhancements retroactively.  The second was to establish a judicial process for "second look" resentencing, the Model Penal Code's term for revisiting inmates' entire sentences.  (Committee on Revision of Penal Code, Annual Report and Recommendations, *supra*, at p. 68).  Each proposal became a different bill.

---

[6]  Committee on Revision of Penal Code, Annual Report and Recommendations, (Feb. 9, 2021) <https://perma.cc/TG5N-XNGL>, pages 48-51, 64-68.

First, on March 3, 2021, Senate Bill No. 483 was introduced to implement the recommendation to strike prison prior enhancements.[7] The first version of Senate Bill No. 483 strictly followed the committee recommendation and had no resentencing provision. Rather, the statute's subdivision (c) directed courts to "administratively amend the abstract of judgment to delete that enhancement." The proposal had no subdivision (d), as would the final bill. There was no "lesser sentence" requirement, and courts had no authorization to consider other changes in law. The initial bill analysis quotes the bill's author as stating that Senate Bill No. 483 is eliminating the enhancements "[a]s recommended by the state's Committee on Revision of the Penal Code." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 483, *supra*, hearing Apr. 27, 2021 for version Mar. 3, 2021, p. 2.)

Meanwhile, on March 11, 2021, Assembly Bill No. 1540 (Assem. Bill No. 1540) was introduced in the Assembly Committee on Public Safety to implement the "second look" recommendation for defendants who law enforcement suggested for recall and resentencing. The introduced version of Assem. Bill No. 1540 contained resentencing provisions like those that the same committee would, four months later, import into Senate Bill No. 483. In its proposed section 1170.03 (later adopted and then renumbered as section 1172.1), Assem. Bill No. 1540 proposed resentencing to "eliminate disparity of sentences and to promote uniformity of resentencing," and it contained a description of

---

[7] The substance of Senate Bill No. 483 was offered as an amendment replacing unrelated text of an existing bill. The same occurred with Assembly Bill No. 1540 discussed next.

the post-conviction factors that a court may consider. (Proposed § 1170.03, subds. (a)(2), (a)(4).) The committee's analysis of the bill discussed the Committee on Revision of the Penal Code's "second look" resentencing recommendations and stated that "[t]his bill is a response to the Committee's recommendations on resentencing." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1540, as amended April 22, 2021, pp. 5-6.)

Senate Bill No. 483—the prison prior bill—passed the Senate and proceeded to the Assembly Committee on Public Safety. There, an important change occurred. That committee amended the bill to eliminate the "administrative" striking of enhancements and replaced it with the recall and resentencing provisions now found in section 1172.75, subdivision (d). (See Assem. Com. on Public Safety, Analysis of Assem. Bill No. 483, as amended July 7, 2021, pp. 1-2 [explaining resentencing provisions].) The committee adapted those provisions from Assem. Bill No. 1540, the "second look" resentencing bill. A staff member from the Committee on Revision of the Penal Code testified before the Assembly Committee on Public Safety in support of the amended bill on July 13, 2021, stating that "as amended by the committee, it will ensure that fair sentencing hearings are held when necessary" and "it will promote justice, rationality, uniformity in sentencing."[8] At that point, Senate Bill No. 483 no longer was about only eliminating enhancements; it also reflected the resentencing goals in the "second look" resentencing recommendation.

---

[8] https://www.assembly.ca.gov/media/assembly-public-safety-committee-20210713 [testimony of Natasha Minsker beginning at approximately 2:19:00].)

19

The Legislature enacted both Senate Bill No. 483 and Assem. Bill No. 1540, providing similar resentencing provisions in each. Both current section 1172.75, subdivision (d)(2) and section 1172.1, subdivision (a)(2) instruct courts to apply "changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." Both current section 1172.75, subdivision (d)(3) and section 1172.1, subdivision (a)(5) allow courts to consider "postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."

This legislative history, then, confirms that section 1172.75 reflects not just the purpose of eliminating one-year prison prior enhancements (one proposal of the Committee on Revision of the Penal Code) but also the purpose of revisiting the sentences of persons sentenced under other laws that have been changed, or where post-conviction factors might make a difference (the separate "second look" proposal).

*Rhodius*, however, relied on only a single piece of Senate Bill No. 483's legislative history: a March 3, 2021, report from the Senate Public Works Committee, discussing the bill's initial version. (See *Rhodius*, *supra*, 97 Cal.App.5th at pp. 46-48.) At that point, the draft statute contained no resentencing provisions and required courts simply to delete prison prior enhancements. That report does not relate to the purpose of the Assembly's

July 2021 decision to amend the statute to require recall and resentencing and to authorize courts to consider other changes in law and post-conviction conduct by creating subdivision (d). While *Rhodius* relied on one piece of statutory text—the word "lesser" in subdivision (d)— it addressed only legislative history that pre-dated the existence of that word in the statute and indeed preceded its entire subdivision. That is, the word "lesser" was added to the statute in a set of resentencing provisions that did not yet exist when the legislative document that *Rhodius* relied on was created.

As discussed in section I.A.4 above, the Legislature articulated the purpose of the subdivision (d) resentencing provisions. The express purpose, to "eliminate disparity of sentences and to promote uniformity of sentencing," was adapted from the "second look" resentencing proposal legislation, Assem. Bill No. 1540. This history of section 1172.75 provides another reason why "imposed" means what the text states it does: a prison prior included in the judgment. By providing for recall and resentencing while eschewing the proposal to simply strike the enhancements, the Legislature's intent was—as in section 1172.1—to allow resentencings so that applying "any other changes in law" will "eliminate disparity" with defendants sentenced today. (§ 1172.75, subd. (d)(2).) Resentencing those with "imposed and stayed" enhancements serves this goal just as much as resentencing those with "imposed and executed" ones. Under the statute, defendants like Quintana merit a resentencing.

21

## II. Quintana's Motion to Vacate Restitution Fine was Correctly Denied

In March 2024, Quintana moved to vacate a $10,000 restitution fine imposed under section 1202.4, subdivision (b), as part of his original sentence. The trial court denied the motion. He argues this was erroneous because sentencing laws have changed so the restitution fine is "now unauthorized." We are unpersuaded.

Quintana misconstrues the relevant statutory changes. Assembly Bill No. 177 (2021-2022 Reg. Sess.) amended section 1465.9 to provide that, effective January 1, 2022, "the balance of any court-imposed *costs* pursuant to [s]ection . . . 1202.4 . . . as [that] section[] read on December 31, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Stats. 2021, ch. 257, § 35; § 1465.9, subd. (b) (italics added).) Assembly Bill No. 177 also repealed and then re-enacted section 1202.4, eliminating former subdivision (*l*), which authorized county administrators to impose an administrative fee to cover the costs of collecting the restitution fine. (Stats. 2021, ch. 257, §§ 19, 20.) This repeal, however, left the rest of section 1202.4 intact, including the authorization of restitution fines under subdivision (b). Thus, section 1465.9, subdivision (b), does not render invalid restitution fines under section 1202.4, and does not provide a means for reducing or vacating Quintana's restitution fine. (Accord *People v. Foster* (2024) 102 Cal.App.5th Supp. 1, *8 ["Section 1465.9's plain language provides only certain 'court-imposed costs' are unenforceable and uncollectible. The plain language does not include interest accrued on the restitution amount owed to the victim."].)

Quintana's invocation of section 1172.1, subdivision (a)(1), is unavailing for the similar reasons. That statute, effective January 1, 2024, allows the trial court on its own motion to recall and resentence a defendant where "the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law." (§ 1172.1, subd. (a)(1).) As discussed, section 1465.9, subdivision (b), did not change applicable sentencing law, so the trial court did not have jurisdiction to modify or vacate the restitution fine on that basis. (See *People v. King* (2022) 77 Cal.App.5th 629, 636 [discussing "the general common law rule that 'a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced.'"])

Still, as discussed in Section I above, under section 1172.75, Quintana is entitled to recall of his sentence and a "full resentencing." (*People v. Monroe*, *supra*, 85 Cal.App.5th at p. 402.) At resentencing, Quintana may argue that the trial court should impose a restitution fine in a different amount than was originally imposed. We note also that, since the briefing in this appeal, a newly enacted section 1465.9, subdivision (d), has become effective, and it provides for vacating the remaining balance on a restitution fine after ten years.

DISPOSITION

The trial court's order denying Quintana's petition for resentencing is reversed, and the matter is remanded with instructions to grant the motion, recall Quintana's sentence, and resentence him consistent with section 1172.75 and current law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL                    
                                                                                    J.

I concur:

FIELDS                    
                           J.

24

[*People v. Quintana*, E083225]

McKINSTER, Acting P. J., dissenting:

I continue to adhere to our decision in *People v. Rhodius* (2023) 97 Cal.App.5th 38, review granted February 21, 2024, S283169. The majority's reliance on the People's concession in *People v. Renteria* (2023) 96 Cal.App.5th 1276, 1282, that section 1172.75's resentencing provision "'squarely applies' to 'imposed and stayed' enhancements" (maj. opn. *ante*, at p. 5) is unconvincing. Since that decision, in every published, and nearly every nonpublished case I have seen, including this one, the People have contested its applicability. (See, e.g., *People v. Saldana* (2023) 97 Cal.App.5th 1270, 1272-1273, review granted Mar. 12, 2024, S283547 [Where the People initially agreed the defendant was entitled to a full resentencing hearing but later filed a petition for rehearing "indicating that the concession was presented in error, . . ."].) Thus, I believe that in *Renteria*, the People improvidently conceded the law's applicability to cases wherein the court stayed the enhancement.

Therefore, defendant was not entitled to a full resentencing hearing because he was not serving time on a section 667.5, subdivision (b) enhancement, time on the enhancement could now never be imposed, and striking the enhancement would not result in a lesser sentence than the one originally imposed.

To interpret the law to permit relief to a person who was "lucky" enough to *only* have punishment on his enhancement stayed but not to someone who was "unfortunate" enough to have his enhancement *completely* stricken strains credulity. (See, e.g., *People*

1

*v. Tang* (2025) 109 Cal.App.5th 1003, 1006 [Defendant not entitled to resentencing where the trial court stayed the enhancement, but the appellate court modified the judgment on direct appeal to strike the prior prison term.])  Therefore, I would affirm the order denying defendant a full resentencing hearing in its entirety.


McKINSTER<br>
Acting P. J.